```
                                           1   UNITED STATES DISTRICT COURT
                                               SOUTHERN DISTRICT OF NEW YORK
                                           2   ------------------------------x

                                           3   UNITED STATES OF AMERICA,

                                           4           v.                              16 Cr. 412 (SHS)

                                           5   SANJAY VALVANI,

                                           6                   Defendant.

                                           7   ------------------------------x

                                           8                                           New York, N.Y.
                                                                                       June 15, 2016
                                           9                                           2:10 p.m.

                                          10
                                               Before:
                                          11
                                                               HON. SIDNEY H. STEIN,
                                          12
                                                                                       District Judge
                                          13

                                          14                        APPEARANCES

                                          15   PREET BHARARA
                                                    United States Attorney for the
                                          16        Southern District of New York
                                               DAMIAN WILLIAMS
                                          17   IAN McGINLEY
                                               JOSHUA NAFTALIS
                                          18        Assistant United States Attorneys

                                          19   KRAMER LEVIN NAFTALIS & FRANKEL
                                                    Attorneys for Defendant
                                          20   BARRY H. BERKE
                                               ERIC THIRSCHWELL
                                          21   JADE BURNS

                                          22
                                               ALSO PRESENT:  MATTHEW CALLAHAN, FBI
                                          23                  LISA CHAN, Pretrial

                                          24

                                          25
```

1               (Case called)

2               THE COURT:  Please be seated.  We are going to wait

3   for the defendant.  I am told he is on the way.

4               I thought he was on the way up, but apparently he's

5   not.  I am going to step off the bench and I will come back

6   when the defendant is here.

7               (Recess)

8               MR. WILLIAMS:  Good afternoon, your Honor, Damian

9   Williams, Ian McGinley and Joshua Naftalis for the government.

10  With us at counsel table is Special Agent Matthew Callahan from

11  the FBI and also Lisa Chan from pretrial services.

12              MR. BERKE:  Good afternoon.  Barry Berke, Eric

13  Thirschwell, and Jade Burns for Sanjay Valvani.

14              THE COURT:  Let's start with the government.  What can

15  I do for you?

16              MR. WILLIAMS:  Your Honor, the defendant was arrested

17  this morning.  He self-surrendered to the FBI at approximately

18  6 in the morning.  He needs to be presented and also arraigned

19  on the indictment.

20              THE COURT:  He has not seen a judicial officer yet?

21              MR. WILLIAMS:  That's correct, your Honor.

22              THE COURT:  Mr. Valvani, if you would stand, sir.

23  What's your full name?

24              THE DEFENDANT:  Sanjay Valvani.

25              THE COURT:  Mr. Valvani, I wish to inform you of some

1   constitutional rights you have.  First of all, you have the
2   right to remain silent, sir.  Do you understand that?
3           THE DEFENDANT:  Yes, sir.
4           THE COURT:  You don't have to make any statement
5   whatsoever to any law enforcement officer.  Do you understand
6   that?
7           THE DEFENDANT:  Yes.
8           THE COURT:  And even if you've already made statements
9   to any government official or law enforcement officer, you
10  don't have to make any additional statement whatsoever.  Also,
11  any statements that you do make can be used by the authorities
12  against you.  Do you understand all of that?
13          THE DEFENDANT:  Yes, your Honor.
14          THE COURT:  Now, you have the right, sir, to be
15  represented by an attorney today and at all other proceedings
16  in this action against you, all other aspects of the action
17  against you.  And if you cannot afford an attorney, I will
18  appoint an attorney to represent you at no charge to you.  It
19  will be free.  Do you understand all that?
20          THE DEFENDANT:  Yes, your Honor.
21          THE COURT:  Do you have an attorney today, sir?
22          THE DEFENDANT:  Yes, I do.
23          THE COURT:  Who is that?
24          THE DEFENDANT:  Barry Berke.
25          THE COURT:  Mr. Berke, I take it you are retained,

1    Mr. Berke?

2             MR. BERKE:  We are, your Honor.

3             THE COURT:  Mr. Valvani, a grand jury has returned an
4    indictment against you and it's entitled United States of
5    America v. Sanjay Valvani.  It's denominated as 16 Cr. 412.
6    Have you received a copy of that indictment, sir?

7             THE DEFENDANT:  I have reviewed the summary of the
8    indictment with my counsel.

9             THE COURT:  You have the right to have me read that
10   indictment to you in open court.  You don't have to have me
11   read it.  You have the right to waive my reading of it.  Do you
12   want me to read that indictment to you now in open court, sir
13   or do you want to waive my reading of it?  It's entirely up to
14   you.  It makes no difference to me.

15            THE DEFENDANT:  Please waive, your Honor.

16            THE COURT:  I accept that as a knowing and voluntary
17   waiver of the right to have the indictment read in open court.

18            However, sir, I would like you to read the entire
19   indictment.  You've discussed it with your attorney, is that
20   correct?

21            THE DEFENDANT:  It was read to me, your Honor.

22            THE COURT:  I want to make sure that you have a good
23   sense of the entire indictment.  Take a moment now, be seated,
24   go through it with your attorney.  He can answer any questions
25   you want.  You'll have an opportunity, obviously, later to ask

1  him whatever questions you want.  But before I adduce a plea
2  from you, sir, I want to have a sense that you've really read
3  the indictment, you know what's in it.  Why don't you be seated
4  and take a moment.
5          MR. BERKE:  Your Honor, for your Honor's benefit, we
6  appreciate the opportunity.  Because Mr. Valvani was in the
7  marshal's custody, Ms. Burns read to him literally verbatim the
8  entire indictment.
9          THE COURT:  I'm sorry.  I did not understand that.
10         Ms. Burns, you read the entire indictment to
11 Mr. Valvani
12         MS. BURNS:  I did, your Honor.
13         THE COURT:  Then we can proceed on that basis.
14 Obviously, Mr. Valvani, Mr. Berke will answer any questions
15 that you wanted and you should take with you a copy of the
16 indictment.  Obviously, it's a very important document for you.
17         I have accepted of waiver of the indictment.  Let me
18 ask now, sir, how do you plead to the charges against you in
19 indictment 16 Cr. 412, guilty or not guilty, sir?
20         THE DEFENDANT:  Not guilty, your Honor.
21         THE COURT:  I accept your plea of not guilty.  You may
22 be seated.
23         Government, what do we have in terms of discovery and
24 how long will it take for the government to fulfill its
25 discovery obligations here?

1                MR. WILLIAMS:  Your Honor, in this case the government
2     and defense counsel have conferred.  We anticipate producing
3     discovery in 30 days, your Honor.  The discovery is rather
4     voluminous and consists of the usual evidence that one tends to
5     see in these cases.  And we propose to come back the first week
6     of August, your Honor.  We spoke with your deputy and August 2
7     at 2:30 is the date that the parties propose to come back
8     before your Honor.
9                THE COURT:  Let's have the last date for government
10    discovery be July 15.  The next pretrial conference will be
11    August 2 at 2:30 p.m. in this courtroom.
12               Has bail been set?
13               MR. WILLIAMS:  Your Honor, bail has not yet been set.
14    We have been in discussions with defense counsel and we have a
15    proposed package for your Honor's consideration.  We would
16    propose --
17               THE COURT:  Just a moment.  Yes, sir.
18               MR. WILLIAMS:  Your Honor, we would propose a $5
19    million personal recognizance bond secured by the defendant's
20    Brooklyn residence, which is listed in the pretrial report.
21               THE COURT:  Let me take a look at it.  I have the
22    pretrial report here.
23               MR. WILLIAMS:  It's on page 3, your Honor.
24               THE COURT:  The agreed-upon proposal is a $5 million
25    personal recognizance bond secured by the Brooklyn property.

1        Yes.

2        MR. WILLIAMS: Two cosigners, your Honor, and travel
3   limited to the Southern and Eastern Districts of New York and,
4   furthermore, the states of Michigan, Illinois, New Jersey,
5   Connecticut, and Pennsylvania. And those five additional
6   states would be with prior notice to pretrial services but not
7   prior approval, your Honor.

8        THE COURT: What is there generically that requires
9   his going there, Mr. Berke?

10       MR. BERKE: Your Honor, thank you. For Michigan, your
11  Honor, both of Mr. Valvani's parents reside in Kalamazoo,
12  Michigan. His mother recently had an injury where she broke a
13  bone and Mr. Valvani visits them often. His in-laws reside in
14  Illinois, in Chicago. Again, the family has frequent travel to
15  Illinois. His two daughters are competitive athletes and play
16  in regular tournaments and most weekends Mr. Valvani is taking
17  them to tournaments that are principally in New Jersey, New
18  York, Connecticut, and Pennsylvania. There is travel to other
19  states, to Virginia and the like, but we would anticipate, with
20  your Honor's permission, to the extent there are such
21  tournaments, we would make such applications to the Court to
22  allow him there to travel for those tournaments.

23       THE COURT: Thank you. What else?

24       MR. WILLIAMS: Your Honor, the remainder of the
25  conditions are as pretrial has set forth in the report. He

1   should surrender his travel documents and make no new
2   applications for travel documents, and he be subject to
3   pretrial services monitoring.
4        THE COURT:  You are not requesting electronic
5   monitoring.  You mean standard pretrial --
6        MR. WILLIAMS:  Standard conditions, your Honor.
7        Your Honor, just to be clear, we would give the
8   defendant two weeks to meet the conditions of his release and
9   that he be released on his own signature today.
10       THE COURT:  I have a couple of questions on the
11  financial documents.  They don't seem to have or at least
12  what's in the pretrial services report, under assets there is
13  no listing for the value, his partnership interest, and no
14  indication that he owns equity securities.
15       Mr. Berke, is that anywhere on this report in terms of
16  the financial information?
17       MR. BERKE:  Your Honor, it's not.  Pretrial services
18  did not ask for that information.  I would think the only other
19  information that pretrial services asked and Mr. Valvani gave
20  that's not reflected is he did provide what he paid for the
21  various residences.  I think the unknown was the current value.
22  If it would be helpful for your Honor, I can certainly give you
23  that information, what the value of the residence is or any
24  other information that would be helpful to your Honor.
25       THE COURT:  In terms of my obligation to have

1  reasonable assurance of his return, it seems to me I would need
2  to know within some measure of reliability what the $5 million
3  personal recognizance bond secured by the property would
4  represent, that is to say, if it's not an insignificant amount
5  of his net worth, he would be more likely to stay than if it
6  were a trifle.  From that standpoint I think I need more
7  information.
8       MR. BERKE:  Your Honor, if you give me a minute or
9  two, I believe I can provide you that information.
10       THE COURT:  All right.  As I say, the partnership
11  interest and equity ownership does not seem to be here.
12       Does the government feel it has a sense of those
13  numbers?
14       MR. WILLIAMS:  Your Honor, we don't have a full sense
15  of the defendant's net worth.  We raised it with Mr. Berke and
16  he confirmed that this is not a complete accounting of his net
17  worth.  But we did have a prior phone conversation in which he
18  gave us an estimate for the current value of the Brooklyn
19  residence before we accepted that as security.
20       THE COURT:  Is that in excess of the $5 million?
21       MR. WILLIAMS:  It is, your Honor.  I don't want to
22  speak for Mr. Berke or Mr. Valvani, but they can certainly
23  provide you with the estimate that they gave us.
24       THE COURT:  Fine.  Let me hear from Mr. Berke.
25       MR. BERKE:  Your Honor, in terms of the partnership,

1    while he has a title of partner, it's phantom equity. It's not
2    a legal partnership. So there is no value attached to that.
3    Mr. Valvani does have approximately $8 million in deferred
4    compensation that is not due and owing to him until January of
5    next year. It is due and owing to him in January.
6              For the properties listed, the Brooklyn property
7    that's listed at 16 Sidney place, Mr. Valvani purchased that in
8    2006 for approximately $3.8 million. There was approximately
9    $4 million in renovations. If we were to estimate a range of
10   what it could be worth today, the estimate would be
11   approximately 10 to $12 million. There is a $2 million
12   mortgage on it. Your Honor, this is on page 3 of the pretrial
13   services report.
14             THE COURT: So the 10 to $12 million estimate, $2
15   million mortgage, you are talking about equity of roughly 8 to
16   10 million.
17             MR. BERKE: Roughly. Again, that is based on an
18   estimate.
19             THE COURT: I understand.
20             MR. BERKE: For the residence that's in Manhattan
21   that's identified, that was purchased in 2015 for $11 million
22   and that has a $4 million mortgage on it. And then the third
23   property listed was purchased in 2011 for approximately 9.5
24   million. It has a $4 million mortgage as well. And it's
25   estimated that the value of that is slightly higher than the

1   purchase price.  Those are the principal assets other than
2   what's listed.
3              THE COURT:  I would assume in his business he would
4   have a substantial equity position.
5              MR. BERKE:  Today it's reflected in simply the $8
6   million in deferred compensation and other than that there is
7   no current monetizing equity interest.
8              THE COURT:  Thank you.
9              On the basis of the parties' agreement, this is the
10  bail package that I will set.  $5 million personal recognizance
11  bond secured by the property at 16 Sidney place.  Is that a
12  co-op or condominium within a larger residence?
13             MR. BERKE:  It is a private home, your Honor.
14             THE COURT:  $5 million personal recognizance bond
15  secured by the property at 16 Sidney place, Brooklyn, New York.
16  I am going to require that there be the signature of two
17  financially responsible persons as well.
18             Mr. Valvani can be released upon his signature today.
19  The defense will have two weeks from today to provide two
20  financially responsible persons acceptable to the government
21  and have them sign.  If there is a dispute as to whether or not
22  they were acceptable, that can always be brought to my
23  attention.
24             Travel is limited to the Southern District and Eastern
25  Districts of New York and, in addition, the defendant can

1    travel to Michigan, Illinois, New Jersey, Connecticut, and
2    Pennsylvania with prior advanced approval of pretrial services,
3    and he must indicate to pretrial services the dates that he
4    wants to go to those states, where he will be staying, contact
5    numbers, and the reason for the visits.
6              MR. BERKE:  Your Honor, if I may, I'm sorry to
7    interrupt.  The agreement between the parties, if acceptable to
8    your Honor, is he will be permitted to travel to those states
9    simply providing notice to pretrial services rather than
10   permission.
11             THE COURT:  Simply providing notice --
12             MR. BERKE:  Rather than permission.  And in my
13   experience --
14             THE COURT:  That will make it easier if he has
15   frequent trips.
16             MR. BERKE:  Exactly.
17             THE COURT:  That's fine.  But in the notice I want him
18   to state the dates, the reason, where he's staying, and contact
19   information.
20             MR. BERKE:  Of course, your Honor.
21             THE COURT:  He doesn't have to seek approval for those
22   states.  Any other states, separate issue.
23             MR. BERKE:  Thank you, your Honor.
24             THE COURT:  Where is his passport?
25             MR. BERKE:  It was turned over this morning to the

1  FBI, your Honor.
2          THE COURT:  Now, there is also a reference here to a
3  global passport card.  I take it that's simply he's part of the
4  TSA global entry system.  Is that what that is?
5          MR. BERKE:  Exactly, your Honor.
6          THE COURT:  The passport is turned over.  I take it
7  his children and his wife have passports as well.
8          MR. BERKE:  They do, your Honor.
9          THE COURT:  I want those turned over as well.
10         MR. BERKE:  Your Honor, may I ask, though, I do
11 believe that to the extent his wife and/or children together
12 did want to travel -- if he were seeking travel, he would need
13 permission from the Court to do it.  But his wife and his
14 children may seek to travel during vacation time without
15 Mr. Valvani.
16         THE COURT:  They can seek permission then.  I want the
17 passports turned over.  They can always seek permission.  I'll
18 want to know when they are going and where.
19         MR. BERKE:  Certainly, your Honor.
20         THE COURT:  They should seek permission.
21         They can either be turned over to the government or,
22 Mr. Berke, you can hold them, if you want, as an officer of the
23 court.  It is up to you.  But I do want them either in your
24 possession or the government's possession.
25         MR. BERKE:  Thank you, your Honor.  We would be happy

1  to hold them.  And to the extent they seek travel, we will
2  apply to the Court with notice to the government.
3          THE COURT:  Absolutely.  As an officer of the court
4  don't release those without the permission of the Court.
5          MR. BERKE:  Yes, your Honor.
6          THE COURT:  No new travel applications are to be made,
7  pretrial supervision, and the defendant should follow all the
8  standard conditions of pretrial supervision.
9          Ms. Chan, have I left out anything in terms of
10 conditions?  I think that's it in terms of standard conditions.
11 Nothing else.  Is that right?
12         MS. CHAN:  No, your Honor.  I do have a question.  Is
13 the defendant's passport also to be turned over to his
14 attorney?
15         THE COURT:  The FBI has it.  The FBI can keep it.
16 That's fine.  Who has the passport?
17         MR. WILLIAMS:  The FBI has it.  We are going to give
18 it to pretrial.
19         THE COURT:  Fine.  Pretrial will have it.  Everyone
20 know where the passports are now?  The pretrial services will
21 have the passport's defendant.  The family's passports will be
22 in the possession of Mr. Berke.  I think those are the
23 conditions that I am imposing.
24         Mr. Berke, understood?
25         MR. BERKE:  Absolutely, your Honor.

1            THE COURT:  Anything else I can do for the parties?
2    Government?
3            MR. WILLIAMS:  Your Honor, we move to exclude time
4    between today and August 2.
5            MR. BERKE:  We consent, your Honor.
6            THE COURT:  On motion of the government and with the
7    specific consent of the defendant, I hereby exclude time
8    pursuant to 18 U.S.C. 3161 (h)(7)(A).  I make the finding that
9    the ends of justice outweigh the interests of the public and of
10   Mr. Valvani in a speedy trial.
11           Mr. Valvani, you understand, sir, that you can't leave
12   the country.  You understand that you have to follow all the
13   conditions of bail.  I take it also, sir, you understand that
14   any violation of any of the conditions of bail will be dealt
15   with by the Court.  You understand all that?
16           THE DEFENDANT:  Yes, your Honor.
17           THE COURT:  I'll see you then on August 2, sir,
18   correct.
19           THE DEFENDANT:  Yes, sir.
20           THE COURT:  Or any date I adjourn the conference to.
21           Nothing more, government?
22           MR. WILLIAMS:  No, your Honor.  Thank you.
23           THE COURT:  Nothing more, defense?
24           MR. BERKE:  No, your Honor.  Thank you.
25           THE COURT:  Thank you, all.  (Adjourned)